## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID J. MICHAEL, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | CIVIL NO. 07-103-P-H |
| | ) | |
| MICHAEL A. LIBERTY, ET AL., | ) | |
| | ) | |
| DEFENDANTS | ) | |

## DECISION AND ORDER ON PLAINTIFF'S MOTIONS FOR SANCTIONS AND FOR SUMMARY JUDGMENT

This is a diversity jurisdiction case about an unpaid loan. During discovery, all the defendants without excuse failed to appear for their properly noticed depositions. I therefore **GRANT** the plaintiff's motion for Fed. R. Civ. P. 37(d) sanctions: (1) the defendants are prohibited from introducing evidence about any facts pertaining to claims or defenses that existed prior to January 18, 2008 (the date of the last missed deposition); and (2) the defendants must pay the plaintiff's reasonable expenses, including attorney fees, caused by the failures to appear.[1]

The plaintiff also filed a motion for summary judgment. For the reasons explained in Part II *infra*, I **GRANT PARTIAL SUMMARY JUDGMENT** that a valid contract exists, that all the defendants are bound by that contract, that the defendants are in default on the $400,000 promised to the plaintiff in the contract, and that the plaintiff may recover only post-judgment interest. The only remaining issue is the

defendants' affirmative defense that a settlement agreement has already been reached with the plaintiff, a question for which there remains a genuine issue of material fact for trial.

## I. PLAINTIFF'S MOTION FOR FED. R. CIV. P. 37(d) SANCTIONS

Four times the defendant Michael A. Liberty ("Liberty") failed to appear for his deposition (and to produce the requested documents) after receiving proper notice.  See Mot. for Sanctions Against Defs. Pursuant to Fed. R. Civ. P. 37(d), at 1–2 (Docket Item 26) ("Mot. for Sanctions").  Without excuse, American Housing Preservation Corporation, Liberty Management, Inc., and Equity Builders, Inc. (collectively, the "Liberty Entities"), the corporate defendants, failed to provide a representative and produce documents at their properly noticed deposition.  Id. at 5.  Liberty and the Liberty Entities do not contest these factual assertions in the plaintiff David J. Michael's ("Michael") motion; and they do not provide any explanation for their failure to appear for the scheduled depositions.  Defs.' Objection to Pl.'s Mot. for Sanctions (Docket Item 37).  Their only defense to the motion for sanctions is that Michael did not follow the process required by Local Rule 26(b) for the filing of a discovery motion.  Id. at 1–3.[2]  Local Rule 26(b), however, applies to motions requesting discovery, not to a motion for sanctions

---

[1] By May 7, 2008, the plaintiff shall file his statement of expenses, with supporting documentation. The defendants may respond by May 21, 2008.
[2] The relevant portion of Local Rule 26(b) states:  "No written discovery motions shall be filed without the prior approval of a judicial officer.  A party with a discovery dispute must first confer with the opposing party in a good faith effort to resolve by agreement the issues in dispute.  If that good faith effort is unsuccessful, the moving party shall then seek a prompt hearing with a judicial officer by telephone or in person."

pursuant to Fed. R. Civ. P. 37(d).  I find no procedural obstacle to consideration of Michael's motion for sanctions.

As sanctions, Michael requests entry of judgment against Liberty and the Liberty Entities (or an order precluding them from introducing evidence) and reasonable attorney fees.  Mot. for Sanctions at 6.

Fed. R. Civ. P. 37(d) allows a court to order sanctions if "a party . . . fails, after being served with proper notice, to appear for that person's deposition."  The permissible forms of sanctions include:

> (i)  directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> . . . .
>
> (vi) rendering a default judgment against the disobedient party . . . .

Fed. R. Civ. P. 37(b)(2)(A).  The court, at a minimum, must order "the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

Liberty's unexcused failure to appear for multiple scheduled depositions demonstrates a "troubling lack of respect for the judicial process."  See Guex v. Allmerica Fin. Life Ins. & Annuity, 146 F.3d 40, 42 (1st Cir. 1998).  Given Michael's inability to depose Liberty (or obtain the requested document

production), it would be unfair to allow Liberty to present evidence regarding any claims or defenses that existed before January 18, 2008 (Liberty's last deposition date was January 17, 2008, and the last deposition date for the Liberty Entities was January 18, 2008). That is the sanction that I award. The failure to appear of the Liberty Entities was less egregious, but nevertheless deserving of the same sanction.[3] More severe sanctions (such as dismissal of the case) have been imposed by a district court in this circuit (and affirmed by the First Circuit) for a single instance of failing to appear for a party's properly noticed deposition. See Guex, 146 F.3d at 41–42.

As required by Fed. R. Civ. P. 37 (d)(3), Liberty and the Liberty Entities are liable for Michael's reasonable expenses, including attorney fees, incurred as a result of their failure to appear and produce documents for each properly noticed deposition.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Michael filed a complaint against Liberty and the Liberty Entities on June 5, 2007, alleging breach of contract for failure to repay any of the $400,000 due under a contract. Michael now seeks summary judgment for $400,000 (which reflects a loan principal of $200,000 plus a $200,000 fee) and post-judgment

---

[3] The sanction against Liberty and the Liberty Entities that precludes them from introducing evidence applies only to claims or defenses that existed in the pleadings of this matter (Docket Number 2:07cv103) before January 18, 2008. This sanction does not apply to defenses that arose after this date, such as the ongoing dispute among the parties regarding whether a settlement agreement has been reached. See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982) (a "sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery").

interest.[4]   Liberty's defense to summary judgment is to dispute which of the defendants is bound by the contract and to assert that the parties later entered into a settlement agreement and that he has satisfied that agreement.

## A.  The Loan

***Factual Background***[5]

Liberty owns and controls the corporate defendants, the Liberty Entities. See Pl.'s Statement of Material Facts, ¶ 7 (Docket Item 29) ("Pl.'s SMF"); Defs.' Statement of Opposing Material Facts, ¶ 7 (Docket Item 35) ("Defs.' Opp'n SMF"). Sometime before September 23, 2004, Liberty, on behalf of himself and the Liberty Entities, asked Michael to loan $200,000 for use in the acquisition and development of five specific Section 8 properties.  Pl.'s SMF ¶ 2.  He told Michael that the Liberty Entities would be involved in each of these projects, and promised, on behalf of himself and the Liberty Entities, to repay the $200,000 loan and pay an additional $200,000 fee to Michael.  Pl.'s SMF ¶¶ 3–4.  Liberty denies or qualifies the facts stated in Pl.'s SMF ¶¶ 2–4 by citing a memorandum from Liberty to Michael on September 23, 2004.  See Defs.' Opp'n SMF ¶¶ 2–4; Aff. of David J. Michael in support of Mot. for Summ. J., Ex. A (the "Memorandum"), attached to Pl.'s SMF.  But the Memorandum itself does not support these denials and qualifications.   The underlying summary judgment record adequately supports each of Michael's factual statements.  Michael's affidavit states:

---

[4] Michael has waived his right to pre-judgment interest: he did not specifically make a claim to pre-judgment interest and failed to reply to Liberty's argument that he should be entitled to only post-judgment interest.  See Defs.' Objection to Pl.'s Mot. for Summ. J. ¶ 4 (Docket Item 36).

[5] The case is presented on the plaintiff Michael's motion for summary judgment.  Any disputed facts are therefore construed in the light most favorable to the nonmovants, the defendants in this *(continued on next page)*

> In or about September 2004, Mr. Liberty expressed to
> me an intention to develop five low-income rental properties in
> Virginia, Maryland, Missouri, and New York (the
> "Developments").   Mr. Liberty told me those Development
> projects would each involve American Housing Preservation
> Corporation, Equity Builders, Inc., Liberty Management, Inc.,
> and possibly other Liberty Companies.  Mr. Liberty asked me
> if I would *loan him and the Liberty Companies* $200,000 to
> complete the Developments.
>
> Mr. Liberty *promised that he and the Liberty Companies*
> would return the $200,000 loaned in 2006 at the latest and
> would pay me an additional fee of $200,000. . . .
>
> Liberty represented to me that the $400,000 (the loan
> amount and the additional fee) would be *repaid by him and/or
> the Liberty Companies* in mid-2005.   Based on these
> representations, I agreed to loan $200,000 to Liberty and the
> Liberty Companies.

Michael Aff. ¶¶ 6–8 (emphasis added).

The sole documentation for this loan agreement is the Memorandum.  The

Memorandum is on "The Liberty Companies" letterhead.  The heading of the

Memorandum states, "To: Dave Michael" and "From: Michael Liberty."   The

Memorandum contains the following operative language:

> Per our conversation, this letter will serve as confirmation of
> the terms of your new $200,000 loan.  You will receive a fee of
> $200,000 paid in cash or from shares of ownership in a
> company called Healthy Dairy, LLC.  I will cause said shares
> to be transferred should you choose to take them in lieu of
> your $200,000 fee.  Your entire $200,000 loan will be repaid
> from the receipt of closing proceeds from the following Section
> 8 [apartment complex] acquisitions . . . .

The Memorandum also contains a table showing the "Anticipated Development

Fees" for each of the five real estate projects.  The parties understood that the

---

case.  See <u>Franceschi v. U.S. Dep't of Veteran Affairs</u>, 514 F.3d 81, 83 (1st Cir. 2008).

amounts in the table for each of the five projects would be received by the Liberty Entities.  See Pl.'s SMF ¶¶ 9, 11–12; Defs.' Opp'n SMF ¶¶ 9, 11–12.[6]

Michael wired $200,000 after receiving the Memorandum from Liberty.  Pl.'s SMF ¶ 19; Defs.' Opp'n SMF ¶ 19.[7]

Michael has not received from Liberty or the Liberty Entities any of the principal or fee promised in the Memorandum.  Pl.'s SMF ¶ 58; Defs.' Opp'n SMF ¶ 58.[8]

### Analysis

There is no dispute that a valid, enforceable contract exists and that the contract requires Liberty to pay the $200,000 principal loan plus a $200,000 fee to Michael.  The only legal issue with the contract is whether it binds the Liberty Entities along with Liberty as an individual.  See Defs.' Objection to Pl.'s Mot. for Summ. J. ¶ 3.

Contract interpretation under Maine law is ordinarily a question of law for the court.  See Portland Valve, Inc. v. Rockwood Sys. Corp., 460 A.2d 1383, 1387

---

[6] Liberty and the Liberty Entities object to numerous factual statements by Michael regarding the definition of "closing proceeds" and the receipt of "closing proceeds" by the Liberty Entities.  See Def. Opp'n SMF ¶¶ 8, 23–26, 38–39, 42–43.  Ultimately these objections are irrelevant because Liberty and the Liberty Entities do not defend the breach of contract claim by arguing that a condition precedent in the contract has not yet occurred.  In fact, Liberty implicitly concedes the breach of contract claim, opting only to raise the affirmative defense associated with the settlement agreement (discussed in Part II.B *infra*).  For similar reasons, I find it unnecessary to address the plaintiff's request for judicial notice regarding the corporate ownership of American Housing Preservation, LLC (Docket Item 29-25).

[7] Liberty denies this fact and states that it is "unsupported by the record citation.  There is no Exhibit B attached to David Michael's Affidavit."  Defs.' Opp'n SMF ¶ 19.  The record citation in Plaintiff's Statement of Material Facts is to paragraph 17 of Michael's Affidavit, which fully supports the factual statement although it includes a reference to an Exhibit B that does not exist on the record.

[8] The entity Healthy Dairy, LLC, in which the Memorandum offers Michael equity as a substitute for the $200,000 fee in cash, no longer exists.  Pl.'s SMF ¶ 59; Defs.' Opp'n SMF ¶ 59.

(Me. 1983).[9]  If the contract contains an ambiguity, however, extrinsic evidence may be used to assist in interpretation.  See id.  "Contract language is ambiguous when it is reasonably susceptible of different interpretations."  Id; Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp., 868 A.2d 220, 228 (Me. 2005).

Nothing within the four corners of the contract speaks directly and definitively to whether the Liberty Entities are bound by the contract.  The only indication of the parties involved is in the Memorandum's letterhead ("The Liberty Companies") and heading ("To: David Michael" and "From: Michael Liberty").  There are no signatures.  The use of company letterhead by an agent is evidence of an agency relationship (actual or apparent authority) that can bind the principal to a contract with a third party.[10]  However, the mere use of company letterhead does not unequivocally resolve the issue.  I find that the Memorandum is ambiguous on this point.

If a contractual provision is ambiguous, resolution of that ambiguity is typically determined by the fact-finder and thus not amenable to summary judgment.  See Halco v. Davey, 919 A.2d 626, 629 (Me. 2007) ("Construction of an ambiguous contract is a question of fact for the fact-finder."); Den Norske Bank AS v. First Nat'l Bank of Boston, 75 F.3d 49, 53 (1st Cir. 1996).  However, if the extrinsic evidence regarding an ambiguity is "so one-sided that no reasonable

---

[9] Although the contract does not contain a choice-of-law provision, the parties agree that Maine law applies.
[10] "When a corporate defendant provides its agent with company letterhead, and that agent in turn uses such stationery to purportedly act on behalf of the company, a third party might reasonably rely on the corporation's conduct and infer that the agent had apparent authority to act on behalf of the corporate defendant . . . ."  See Sipes v. Kinetra, LLC, 137 F. Supp. 2d 901, 908 (E.D. Mich. 2001); see also Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1 (1991) (noting the use of company *(continued on next page)*

person could decide the contrary, then it may be decided on summary judgment."[11]

Only Michael has provided evidence as to the intent of the parties regarding whether the Liberty Entities would be bound by the contract.  Michael states by affidavit that Liberty solicited the $200,000 loan on behalf of himself and the Liberty Entities; and that Liberty promised explicitly that the principal and fee would be paid "by him and/or the Liberty Companies."  See Pl.'s SMF ¶¶ 2,4; Michael Aff. ¶¶ 6–8.  This extrinsic evidence is not contradicted by the language of the Memorandum or any competent summary judgment evidence from Liberty; instead, it provides a reasonable interpretation of the Memorandum.  Michael is therefore entitled to partial summary judgment that the contract binds the Liberty Entities and that they are liable to him for the $200,000 principal and $200,000 fee under the contract.

Although an agent is not ordinarily bound by the contract he enters on behalf of his principal, see 12 Richard A. Lord, Williston on Contracts § 35.34 (4th ed. 2007), "an agent may expressly assume obligations under the contract" between the principal and a third-party.  Id.  Here, the evidence presented by Michael, and uncontradicted by Liberty, is that Liberty indicated that he, as an individual, and the Liberty Entities all would be obligated under the contract.  See Pl.'s SMF ¶¶ 2–4.  That uncontradicted evidence is sufficient to conclude that Liberty, as an individual, is also bound to the contract.

---

letterhead as evidence of an agency relationship).
[11] See Nadherny v. Roseland Prop. Co., 390 F.3d 44, 49 (1st Cir. 2004); Den Norske Bank, 75 F.3d at 53; Bourque v. FDIC, 42 F.3d 704, 708 (1st Cir. 1994); Boston Five Cents Sav. Bank v. Sec'y of
*(continued on next page)*

## B.  The Settlement Agreement

Liberty and the Liberty Entities claim that during this litigation, they reached a settlement agreement with Michael in February 2008.  They raise this settlement agreement in opposition to Michael's summary judgment motion for breach of contract.  See Defs.' Objection to Pl.'s Mot. for Summ. J. ¶ 2.

***Factual Background***

It is undisputed that Michael and Liberty discussed a settlement of Michael's claim.  Defs.' Opp'n SMF ¶ 62; Pl.'s Reply SMF ¶ 62 (Docket Item 39).  On February 12, 2008, Liberty signed settlement papers that required him to make a $25,000 down payment, but which also contained numerous blanks to be filled in upon final agreement.  Defs.' Opp'n SMF ¶ 63; Pl.'s Reply SMF ¶ 63; Supp. Decl. of Ryan G. Baker in support of Pl.'s Mot. for Summ. J. ¶ 3 & Ex. A (Docket Item 40).  Those settlement papers were forwarded to Michael for his consideration, but were never signed by Michael or any of his representatives.  Defs.' Opp'n SMF ¶ 63; Pl.'s Reply SMF ¶ 63.  Michael contends that no settlement agreement was ever reached and that his only offer to settle requested a down payment of $28,000 by February 13, 2008.  Pl.'s Reply SMF ¶¶ 64–66; Supp. Baker Decl. ¶¶ 5-7.  By declaration under penalty of perjury, Liberty disagrees and maintains that on about February 13, 2008, Michael sent an email to Liberty stating that $26,000 would be sufficient as a down payment for a settlement.  Defs.' Opp'n SMF ¶ 65.  Michael denies sending such an email.  See Pl.'s Reply SMF ¶¶ 64–66; Supp. Decl. of David J. Michael ¶ 2 (Docket Item 41).   On

the Dep't of Hous. & Urban Dev., 768 F.2d 5, 8 (1st Cir. 1985).

February 27, 2008, Liberty wired $26,000 to Michael, Defs.' Opp'n SMF ¶ 66; Pl.'s Reply SMF ¶ 66, pursuant to what he says was their agreement and the settlement papers he signed on February 12, 2008.  Decl. of Michael A. Liberty ¶ 6, attached to Defs.' Opp'n SMF.  Michael maintains that the $26,000 was $2,000 short and two weeks late to satisfy his proposed settlement.

*Analysis*

An enforceable settlement agreement is an affirmative defense to Michael's underlying claims.  See E.S. Herrick Co. v. Maine Wild Blueberry Co., 670 A.2d 944, 946 (Me. 1996).  But the party seeking to enforce a settlement agreement, or any other type of contract, carries the burden to establish its existence.  See id. Thus Liberty bears the burden to show an enforceable settlement agreement.  Like any contract, a settlement agreement requires an offer and acceptance and a meeting of the minds on the terms of the agreement.  See Rosenthal v. Rosenthal, 543 A.2d 348, 354 (Me. 1988).  Unless explicitly foreclosed by the offeror, acceptance of an offer may occur by actual performance or a promissory acceptance.  2 Richard A. Lord, Williston on Contracts § 6.26 (4th ed. 2007); Restatement (2d) of Contracts § 32 (1981).

On summary judgment, all factual disputes are resolved against the moving party.  I therefore accept as true the statements in Liberty's declaration that Liberty received an email from Michael on about February 13, 2008, that offered to settle for an initial down payment of $26,000 and that Liberty wired $26,000 to Michael on February 27, 2008, pursuant to their agreement and the February 12, 2008, settlement papers.  Despite Michael's objections and contradicting

evidence,[12] Liberty therefore has provided enough to show a genuine issue of material fact regarding whether a settlement agreement was reached by Liberty's acceptance (through performance) of an offer made by Michael in an email on about February 13, 2008.

### III. CONCLUSION

The sole remaining issue for trial is whether the parties reached an enforceable settlement agreement.[13]

**SO ORDERED.**

**DATED THIS 23RD DAY OF APRIL, 2008**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[12] Michael states that there was no such email agreeing to settle for a $26,000 down payment, and further claims that Liberty submitted a false declaration in bad faith that violates Fed. R. Civ. P. 56(g). Pl.'s Reply in Support of Mot. for Summ. J. at 4–5 (Docket Item 42). Liberty has not had a chance to respond on this issue raised in the Reply, and no basis exists at this time for a finding of bad faith by Liberty.

[13] Liberty and the Liberty Entities characterize the settlement agreement as an "accord and satisfaction." Defs.' Objection to Pl.'s Mot. for Summ. J. ¶ 2. "Whether the parties intended the agreement as a standard accord and satisfaction or as a substituted contract is a question of the parties' intent, properly reserved to the factfinder." Rosenthal, 543 A.2d at 355.